1  EDWARD R. SCHWARTZ, CA Bar No. 147553
   ers@cph.com
2  CHRISTIE, PARKER & HALE, LLP
   655 North Central Avenue, Suite 2300
3  Glendale, California 91203-1445
   Telephone: (626) 795-9900
4  Facsimile: (626) 577-8800

5  Attorneys for Plaintiff,
   GUARDIAN POOL FENCE SYSTEMS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUARDIAN POOL FENCE SYSTEMS, INC., | Case No. CV13-6548 MAN |
| Plaintiff, | COMPLAINT FOR PATENT INFRINGEMENT |
| vs. | INJUNCTION RELIEF SOUGHT |
| WEB DIRECT BRANDS, INC., | |
| Defendant. | |

For its Complaint, Plaintiff, Guardian Pool Fence Systems, Inc., alleges as follows:

I. **JURISDICTION AND VENUE.**

1. This is an action for patent infringement in violation of 35 U.S.C. §§ 1, *et seq.* Jurisdiction is conferred by 28 U.S.C. §§ 1338(a). Venue is proper under 28 U.S.C. §§ 1391(b) and (c).

II. **PARTIES.**

2. Plaintiff Guardian Pool Fence Systems, Inc. ("Guardian") is a corporation organized and existing under the laws of the State of California having a principal place of business at 14715 Aetna Street, Van Nuys, California 91411. Guardian is the owner by assignment of U.S. Patent No. 5,664,769 ("the '769 Patent").

3. On information and belief, Defendant Web Direct Brands, Inc. ("WDB") is a corporation organized and existing under the laws of the State of Florida, having a usual place of business at 13100 State Road 54, Odessa, Florida.

4. The '769 Patent, a copy of which is attached hereto as Exhibit A, relates to a protective fence with an auto lockable gate which encloses a home swimming pool.

## FACTS COMMON TO ALL CLAIMS

5. The '769 Patent, entitled "Swimming Pool and Spa Tensioned Protective Fence with Auto Lockable Gate and Method of Installation Thereof" was duly and legally issued on September 9, 1997.

6. Since issue of the '769 Patent, Plaintiff has marked gates which it has sold embodying the teachings of the '769 Patent with a patent notice in accordance with the provisions of 35 U.S.C. § 287.

7. Guardian has a sister company, Child Guard Industries, Inc. ("Child Guard") which shares the same place of business with Guardian. Child Guard sells pool fences and gates which are installed by the consumer.

8. WDB has purchased pool fencing, including Guardian's patented pool fence gate, from Child Guard for several years. Pursuant to this relationship, Child Guard distributed pool fences which WDB had sold to consumers in California and elsewhere.

9. Notwithstanding its knowledge of Guardian and its patented pool fence gate, WDB has imported, offered for sale and sold gated pool fences which are knock-offs of Guardian's patented gated pool fence and therefore infringed the '769 Patent.

10. WDB's infringing product is inferior to Guardian's patented pool fence gate because WDB's product is made from aluminum instead of steel and therefore cannot meet the stress required for the product.

CHRISTIE, PARKER & HALE, LLP

11. On information and belief, upon becoming aware of the structural deficiency of its knock-off pool fence gate, WDB consigned 40 of the gates to Bay Area Auction Services, Inc. of Pinellas Park, Florida for a sale to the public. A true and correct copy of the agreement relating to this consignment is attached hereto as Exhibit B.

12. Steve Phillips purchased the lot of infringing pool fence gates from Bay Area Auction and then offered them for sale to the public on eBay.

13. Defendant WDB has committed acts of patent infringement by directly infringing and by inducing others to infringe the '769 Patent by importing offerings for sale and/or selling gated pool fences which are within the scope of the '769 Patent.

14. As a customer of Guardian's sister company for gated pool fences, WDB is fully aware of Guardian's patent rights. Consequently, WDB's acts of infringement were with full knowledge of the '769 Patent and are willful and deliberate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Guardian requests entry of judgment in its favor and against WDB as follows:

A. A permanent injunction preventing further infringement of the '769 Patent by WDB, its agents, servants, employees and those persons in concert or participation with any of them who receive actual notice of the order by personal notice or otherwise;

B. Damages adequate to compensate Plaintiff for the infringement of the '769 Patent, which damages should be trebled;

C. Prejudgment interest, costs, expenses, and reasonable attorney's fees for this suit;

1   D.   Such other and further relief as this Court may deem just and proper.

DATED: September 4, 2013

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By _____
Edward R. Schwartz

Attorneys for Plaintiff,
GUARDIAN POOL FENCE SYSTEMS, INC.

SES PAS1255320.1-*-09/3/13 12:05 PM

EXHIBIT A



US005664769A

# United States Patent [19]

Sadinsky et al.

[11] Patent Number: 5,664,769
[45] Date of Patent: Sep. 9, 1997

[54] SWIMMING POOL AND SPA TENSIONED PROTECTIVE FENCE WITH AUTO LOCKABLE GATE AND METHOD OF INSTALLATION THEREOF

[75] Inventors: **Steven E. Sadinsky**, Van Nuys; **Chen L. Yu**, Westlake Village, both of Calif.

[73] Assignee: Stephen E. Sadinsky, Van Nuys, Calif.

[21] Appl. No.: 746,652

[22] Filed: Nov. 13, 1996

### Related U.S. Application Data

[60] Provisional application No. 60/020,477 June 13, 1996

[51] Int. Cl.[6] .............................. E04H 17/00; E04H 4/14
[52] U.S. Cl. .................................. 256/73; 256/25; 4/504
[58] Field of Search .................................. 256/26, 25, 73; 49/381, 386; 4/496, 504, 506

[56] References Cited

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 710,051 | 9/1902 | Fullam . |
| 851,936 | 4/1907 | Hendrich .......................... 256/73 X |
| 2,852,876 | 9/1958 | Blum . |
| 3,469,822 | 9/1969 | O'Brien ............................ 256/25 |
| 4,122,630 | 10/1978 | Parisien . |
| 4,122,631 | 10/1978 | Batcheller . |
| 4,662,111 | 5/1987 | Romberg . |
| 5,063,876 | 11/1991 | Harris ............................... 256/25 X |
| 5,192,054 | 3/1993 | Sharp . |
| 5,354,036 | 10/1994 | Brown ............................. 256/25 |
| 5,362,116 | 11/1994 | Doyle et al. .................. 292/251.5 X |
| 5,553,833 | 9/1996 | Bohen ............................ 256/19 X |

*Primary Examiner*—Anthony Knight
*Attorney, Agent, or Firm*—Wagner & Middlebrook

[57] ABSTRACT

A gate assembly for tensioned fences, particularly those which encircle home swimming pools and are removable for swimming pool use. The gate in its preferred form is "U" shaped with no rigid bar at the top and has the space between the bars of the gate filled with tensioned mesh fabric similar to the tensioned fence. The gate is supported by poles on each edge which provides spring closed hinging on one edge and an automatic latch at the opposite edge. The poles are in fact pairs of poles at each side which together react to the tension of the fence without transferring the fence tension to the gate. In one form, the two poles at each edge are rigidly connected by bars which define a truss. The gate supporting poles are secured to the pole decking as by insertion in drilled holes which are at cant angles in the order of 5° away from the direction of the fence tension. A process for installing the fence and gate is described.

19 Claims, 4 Drawing Sheets



U.S. Patent    Sep. 9, 1997    Sheet 1 of 4    5,664,769



FIG. 1
PRIOR ART

FIG. 2



U.S. Patent     Sep. 9, 1997     Sheet 2 of 4     5,664,769



FIG. 3



FIG. 4

FIG. 7    FIG. 7a    FIG. 7b





5,664,769

# SWIMMING POOL AND SPA TENSIONED PROTECTIVE FENCE WITH AUTO LOCKABLE GATE AND METHOD OF INSTALLATION THEREOF

## REFERENCE TO RELATED APPLICATION

This application is a non provisional application based upon and claims benefit of U.S. Provisional Application No. 60/020,477 filed Jun. 13, 1996.

## BACKGROUND OF THE INVENTION

In recent years, the need has been recognized for a type of swimming pool fence which is difficult if not impossible for a small child to climb, is weather resistant and yet may be removed for uninterrupted use of the swimming pool. These fences employ a number of rigid or slightly flexible poles of steel, aluminum or fiberglass which are set in unobtrusive holes in the pool decking approximately two feet from the edge of the pool. These poles are located at approximately 30–48 inch spacing.

Tensioned between the poles is a mesh screen having a binding top and bottom and sufficient tensile strength so that one cannot enlarge the mesh openings to force their way through the fence nor provide any place for grasp or foothold for a child to climb the fence. We have found that the bound upper edge of the fence prevents fraying of the mesh but does not provide a hand hold or sufficient rigidity to aid a child to climb over the fence even if the child reaches the top of the fence. The instability of the top binding acts as a deterrent for the child even if they touch the top of the fence.

The fence may be opened to allow swimmers to enter and leave the pool area by unlatching a section which acts as a gate usually with a spring loaded hook and eye fastener and then by lifting one pole out of its deck socket. The pole must be reinserted and the latch hooked for each entry and departure from the pool area.

When the pool is to be used without the fence, each of the poles are pulled in sequence from their socket and the fabric fencing material and poles rolled to form a compact structure. Reassembly of the fence starts by inserting the first pole, hooking it to some rigid structure and extending each pole in the section in sequence to another rigid structure or back to the original pole to complete a closed circuit. Each section is then tensioned with the fastener connecting each fence section to the next section.

One of the most serious limitations in this type of fence is the lack of a suitable gate. The existing fence opening gates are difficult for persons of smaller height or strength to pull the gate pole out and reinsert it since the entire fence by its very nature is tensioned.

Typically, the fence is erected in sections, e.g., 10–12 feet in length and tensioned together at the top by a fastener such as an additional spring locked hook and eye fastener.

## BRIEF DESCRIPTION OF THE INVENTION

Faced with this state of the art, we determined that it should be possible to produce a tension protective fence with a gate presenting the same overall appearance and degree of safety with far superior accessibility for adults but presenting extreme difficulty for a child to defeat the gate and fence.

Likewise, we have found that it is possible to produce a gate having sufficient rigidity while still maintaining extreme difficulty for a child to climb the gate.

We have accomplished these objectives employing a conventional tensioned pool fence with a multiple pole truss arrangement at each side of the intended gate opening with the multiple poles forming a rigid truss yet having hardly any additional size than the single pole and arranging the poles to be canted sufficiently to provide free standing end posts defining a gate opening. Multiple poles adjacent to the gate relieve the gate from the tension present in the fence. We have designed a unique gate with a secure automatic closure and automatic locking and key locking as well.

This is all accomplished in cooperation with a gate in the preferred form of frame of a "U" shape with a bottom bar side rails and angle bracing rods or gusset plates for reinforcement and a fabric fence material matching the fence extending between the legs of the gate. In its preferred form, there is no top bar so that the gate itself presents no easier access for a child than any section of the fence proper.

Spring closing hinges contained within a smooth housing which provides minimum climbing risk are used for the gate. The closure includes a magnetic latch with a strong magnet located either on the gate or the side post so that the gate will be drawn fully closed and latched whenever it reaches a near closed position. A key lock also is provided so that the full gate can be easily locked with a key at any time. The gate assembly may be removed when the entire fence is removed for unobstructed use and easily installed in just a few minutes time.

## BRIEF DESCRIPTION OF THE DRAWING

This invention may be more clearly understood with the following detailed description and by reference to the drawings in which:

FIG. 1 is a perspective view of a prior art fence and gate opening;

FIG. 2 is a perspective view of a swimming pool fence installation incorporating two gates of this invention;

FIG. 3 is a front elevational view of the gate of this invention with a portion of the pool deck in section;

FIG. 4 is a top sectional view of the gate region of the fence of FIG. 3 taken along line 4—4 of FIG. 3;

FIG. 5 is a fragmentary sectional view of the hinged side of the base of the gate of FIG. 3;

FIG. 6 is an exploded view of the latch assembly of FIG. 3;

FIG. 7 is a perspective view of a hinge of FIG. 3;

FIG. 7A is a top plan view of the hinge of FIG. 3;

FIG. 7B is a front elevational view of a hinge assembly of FIG. 3 partly broken away to show the interior spring;

FIG. 8 is a force diagram of the gate post assembly of FIG. 3;

FIG. 9 is a force diagram of the gate of FIG. 3;

FIG. 10 is a perspective view of the gate latch assembly of FIG. 3 in a closed and locked position;

FIG. 11 is a perspective view of the gate latch assembly of FIG. 3 in an open and unlocked position; and

FIG. 12 a side elevational view of the gate latch of FIG. 3 in a latched position.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 is representative of a prior art tensioned pool fence PF including particularly the gate region G after a hook and eye closure C has been opened. The fence poles P1 and P2 are slightly bowed outward owing to the tension on each section of the fence.

The fact that the entire fence is tensioned when closed allows the poles to be relatively small in diameter, e.g., O.D. 1" and manufactured of steel, aluminum or fiberglass tubing. This characteristic makes opening of a selection or installation of a gate, heretofore, incompatible with normal fence integrity.

5,664,769

3

The pole P1 will normally stay in position and pole P2 may be lifted upward out of its socket S in the pool decking and folded back to allow entrance and departure from the pool area. The fabric F has mesh with openings as small as ⅛" with vinyl coated threads to provide a clear view through the fence to observe the pool condition but so small that even the smallest child can not insert their fingers in the openings of the mesh.

In order to open the gate portion of the tensioned fence PF, an adult must draw the poles P1 and P2 together sufficiently to relax the load on the hook closure C and release it and then in opposition to the pool fence tension must draw the pool pole P2 out of its socket S in the pool decking PD. We have found that individuals with limited strength or manipulative ability have difficulty with these two steps. As shown in FIG. 1, the first step of releasing the hook and eye closure C has been completed. To close the gate, the steps are reversed by an adult.

Now referring to FIG. 2, the entire pool fence 10 employing this invention is shown with two gates, G1 as a patio gate entrance and G2 as a spa gate entrance. The gates G1 and G2 present virtually the same appearance as the tension fence PF above which is made up principally of standard poles 11 and an improved fabric IF with each intersection knot tied and all vinyl coated. The fence 10 has a lower binding 12 and an upper binding 13 and is installed with typically 15–20 lbs tension uniformly from top to bottom around its entire periphery. The openings in the fence 10 are preferably smaller than ¼" and of insufficient size to allow the child to place their fingers or toes in the fence. The top and bottom binding 12 and 13 do not provide any effective foot hold or hand hold to allow lifting a child's body upward.

The gates G1 and G2 may be seen better in FIG. 3 with the pair of poles 20, 22 on one side and 21, 23 on the other side, each pair interconnected by respective cross members 24 and 26 on the hinged side and 25, 27 on the latched side. The net result is that each of the 20 and 22 poles with their cross members 21, 23 form a vertical truss with each pole 20 & 22 in its respective socket S in the deck PD. The deck sockets S are drilled at a cant angle of approximately five degrees toward the gate so that fence 10 is tensioned while the gate opening GO is without any tension from the fence 10 transferred to the gate G. The poles 20 and 22 on the hinged side each bend imperceptively to the vertical by the fence tension from the left. The same is true for the poles 21 and 23 responding to fence tension from the right.

The calculations establish that the dual truss pole of FIGS. 2, 3 and 8 will remain essentially vertical when subject to the unidirectional fabric load of the fence. The dual poles isolate the gate from fence tension. A deflection of 0.054" at the top of a 60 inch pole is calculated. In practice, the pole sockets for the gate pole trusses are drilled at approximately a 5 degree cant away from the fence. Therefore, any deflection of the poles toward the tensioned force is fully compensated. In fact, any slight cant of the gate at the hinged side aids in closing Therefore three closing forces are present, the spring force, gravity and magnetic attraction of the latch. The spring force of the hinges, of course, is the primary closing force.

Now further referring to FIG. 3, in connection with FIGS. 4 and 5, the gates G1 and G2 which are made up, preferably of three frame members including a hinged upright 31, base member 32 and a latched upright 33. Preferably, the base 32 and uprights 31 and 33 are fabricated of steel or aluminum tubing and are attached by screws or other means to the upright 31 and 33 and base 32 welded or brazed into a unitary structure with reinforcing angled rods or gusset plates 35, 36 at the joints between the base member 32 and the uprights 31 and 32. The cross brace CB shown in dashed lines might be used for bending strength provided it is on the

4

pool side of the gate and well below the top of the gate fabric. Tensioned between the uprights is a section of improved fencing material IF with edge bindings 12 and 13 similar to the fence material.

To provide uniformity of appearance and freedom from any rigid top cross bar structure on the gate, the U shaped gate is employed as shown in FIG. 3. It is important that the gate G have sufficient strength and rigidity to operate properly for years. It also resists any failure if a child would attempt to climb it. We have designed such a gate which will not fail if weights equivalent to a 70 pound youngster are applied to the gate.

Corrosion resistant hinges H best seen in FIGS. 7, 7a and 7B, having internal springs SP of FIG. 7B for self closing spring mount the upright 31 to the adjacent pole 22.

The opening side of the gate G1 includes a smooth surfaced latch member 50 secured to pole 21 as best seen in FIGS. 6 and 10–12 and a gate latch assembly 53 carrying a magnet M on the upright adjacent gate pole 33 of FIG. 4. The latch member 50 includes a tube 51 containing a ferromagnetic bar 52 extending along a substantial length of the pole 21 within tube 51 to provide a latching element for the magnet M. The magnet M tends to urge bar 52 toward its socket and is of sufficient strength so that it will draw the gate G closed whenever the gate G is drawn by spring hinges 42 and 43 to an opening of one to two inches. The spring hinges 42 and 43 add sufficient spring tension to securely close the gate G wherever the open gate G is released. Brackets B1 and B2 secure the latch assembly to the upright post 21 and the brackets B7 and B8 secure the magnet M and its housing to the gate upright 33.

The top of the magnetic latch 50 includes a button type handle 60 and a key lock 53 so that the pool gate G not only is closed by the magnet M but may be opened by an adult by lifting handle 60 to disengage the rod 52 from the socket of magnet M and also may be mechanically locked in the closed position by key K.

The method of this invention includes the steps of:
attaching flexible mesh fencing IF to a series of poles P1–Pn at selected intervals;
securing the poles P1–Pn to a pool deck PD at intervals which tension the mesh fencing IF;
securing two pair of poles 20, 22 and 21, 23 together to form a tension absorbing support structure, one at each edge of a gate in the fence 10;
fabricating a gate including a pair of side rails 31 and 33 and a cross rail 32 and tensioned mesh IF extending between the side rails;
pivotally connecting one gate side rail 31 to one of the pairs of poles defining the gate opening; and
releasable connecting the second of the pair of side rails 33 of the gate to one of the second pair of poles defining the gate opening.

The features of our invention are as follows:

1. It provides a tensioned pool protective fence with a tensioned fabric gate in a non tensioned gate opening;
2. Provides a gate which has a degree of protection of a child climbing on it comparable to the fence itself;
3. Provides automatic closing and latching of the gate and locking as well;
4. Provides a design of a gate which provides few if any hand holds or foot grips for any child attempting to climb the fence.
5. Provides a pool security gate with no top gate bar.
6. Openable only at the top of the gate post by a manually dexterous person.

5,664,769

5

The above described embodiments of the present invention are merely descriptive of its principles and are not to be considered limiting. The scope of the present invention instead shall be determined from the scope of the following claims including their equivalents.

We claim:

1. A lightweight fence and gate for swimming pools surrounded by a deck comprising a plurality of poles adapted to be inserted into the pool decking adjacent said pool;

a mesh screen tensioned between said poles having top and bottom bindings;

a gate in said fence including a frame having a pair of spaced upright support members, a first horizontal brace for spacing the upright support members and a length of mesh screen tensioned between said upright support members;

support means capable of withstanding lateral tension forces of said screen for supporting and latching said gate;

hinges secured to said support means on one side of said gate; and

a latch device secured to said gate and to said support means on the opposite side of said gate.

2. A lightweight fence and gate as claimed in claim 1 wherein said hinges have internal gate self closing springs.

3. A lightweight fence and gate as claimed in claim 1 wherein said latch device includes a magnetic latch tending to pull said gate closed and latched.

4. A lightweight fence and gate as claimed in claim 1 wherein said support means includes on each side of said gate a pair of poles inserted into the pool deck in close proximity to each other with cross members attached to both of said pair of poles.

5. A lightweight fence and gate as claimed in claim 4 wherein said poles are secured to the pool deck at a small angle opposing the tension force of said mesh screen.

6. A lightweight fence and gate as claimed in claim 4 wherein said gate includes a generally U-shaped frame opening upwardly with said first horizontal brace secured to the lower ends of said upright support members and a second horizontal brace secured to said upright support members on the pool side of said mesh screen at a height well below the top of said gate fabric.

7. A lightweight fence and gate as claimed in claim 4 wherein said latch device includes a magnetic latch tending to pull said gate closed and latched.

8. A lightweight fence and gate as claimed in claim 4 wherein said latch device includes a ferromagnetic rod carried on one of said poles of said support means and said gate and a magnet having a socket secured to the other of said poles of said support means and said gate for receiving said ferromagnetic rod.

9. A lightweight fence and gate as claimed in claim 8 wherein said latch device includes manual means for disengaging said ferromagnetic rod from said socket.

10. A lightweight fence and gate as claimed in claim 9 wherein said latch means includes a key operated lock for preventing said ferromagnetic rod from being disengaged from said socket.

11. A lightweight fence and gate for swimming pools surrounded by a deck comprising a plurality of poles adapted to be inserted into said deck adjacent said pool;

a first length of mesh screen tensioned between said poles defining the pool fence;

6

a gate in said fence including a generally U-shaped frame opening upwardly having a pair of spaced upright support members and a second length of mesh screen tensioned between said upright support members of said gate; and

support means to which said first length of mesh screen is attached for supporting said fence and gate and latching said gate including a truss structure capable of isolating the lateral tension forces of said first length of mesh screen on opposite sides of said gate.

12. A lightweight fence and gate as claimed in claim 11 wherein said poles are set in openings in said pool deck at a small angle to the vertical opposing the tension force of said first length of mesh screen.

13. A lightweight fence and gate as claimed in claim 11 wherein said latch device includes a ferromagnetic rod carried on one of said truss structure and said gate and a magnet having a socket secured to the other of said truss structure and said gate for receiving said rod.

14. A lightweight fence and gate as claimed in claim 13 wherein said latch device includes manual means for disengaging said ferromagnetic rod from said socket.

15. The method for installing a self closing gate in a tensioned removable swimming pool fence comprising a plurality of poles interconnected by flexible mesh fencing comprising:

inserting a series of said plurality of poles into a deck surrounding a swimming pool with the flexible mesh fencing in tension to maintain the fence in tension;

the first and last poles of said series of poles defining a gate opening;

said first and last poles each constituting a pair of poles interconnected to each other to define a support structure capable of absorbing the tension of the flexible mesh fencing;

fabricating a gate including a pair of side rails, a cross rail and flexible mesh tensioned between said side rails;

hinging the first of said pair of side rails of said gate to the first of said pair of poles; and

installing a latch between the second of said pair of side rails of said gate and said last pole of the tensioned fence;

whereby the gate is free to open and close without interference by the tension of the mesh of said fencing.

16. The method in accordance with claim 15 wherein said plurality of poles are removably secured to the pool deck by drilling holes at intervals sufficient to tension the mesh between adjacent poles and the deck and introducing the lower end of adjacent poles into successively drilled holes;

wherein the holes in the deck adjacent to the gate location are drilled at a slight vertical angle away from the direction of tension applied by the mesh fabric.

17. The method in accordance with claim 15 wherein the gate is installed by drilling a pair of holes on each side of the gate location, one for each pole of the pair of poles.

18. The method in accordance with claim 15 including securing the poles of each pair together to define a fencing tension absorbing support for the gate.

19. The method in accordance with claim 18 wherein the step of securing the poles of each pair together comprises attaching at least one rigid strap between poles.

\* \* \* \* \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO. : 5,664,769
DATED : September 9, 1997
INVENTOR(S) : Steven E. Sadinsky

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the title page item [73], change the spelling of the name of the assignee

from: Stephen E. Sadinsky
to: Steven E. Sadinsky

Signed and Sealed this

Thirty-first Day of March, 1998

Attest:

*Bruce Lehman*

BRUCE LEHMAN

Attesting Officer

Commissioner of Patents and Trademarks

# EXHIBIT B

**Bay Area Auction Services, Inc.**
8010 U.S. Highway 19 North
Pinellas Park, FL 33781
(727) 548-9303

PAGE _____ OF _____

SELLER'S NAME: Web Direct Brands, Inc.
SELLER NO.: WEBD
STREET ADDRESS: 13100 State Road 54
STATE: FL   ZIP: 33556

Matt (Tony) Gaeto

| # | QUANTITY | LOT NO. | DESCRIPTION | VALUE NEW/CURRENT |
|---|---|---|---|---|
| 1 | 4 | 100 | Bounce Houses | with Fans |
| 2 | 1 | 195 | Stamina Viper Home Gym | |
| 3 | 40? | 193 206 | Pool Fence Gates (Mesh) | |
| 4 | 1 | | Bounce House without Fan | |
| 5 | | | Tables Round Wood | |
| 6 | 2 | 188 | High Bar Chairs Frames | |
| 7 | 2 | 188 | Standard Chair Frames | |
| 8 | 10? 85 | 190 | Butcher Block Table | |
| 9 | 3 | | Misc. Furniture Wood | |
| 10 | 211 | 212 | Misc. Fitness Equipment | |
| 11 | 195 | 197 | | |
| 12 | 208 | 209 | And More | |
| 13 | | | | |

I hereby commission you to sell the items listed above to the highest bidder by public auction. I certify that I am the owner of the above listed goods, merchandise, and/or property, have good title, and the right to sell and that all are free from any and all uncumbrances. I agree to accept all responsibility for providing merchantable title and for delivery of title to purchaser. I agree to hold harmless the auctioneers against any claims arising because of any breach of the above certification or failure to convey such good and merchantable title. Insurance liability is that of the consignor.

TOTAL VALUE:
% COMMISSION: 25%
OTHER EXPENSE: $100 mo
TOTAL EXPENSES DEDUCTED:
NET AMOUNT:

SELLER'S NAME SIGNATURE: [signed]

DATE: 4-10-13   AB1126   [signed]
AUCTIONEER/LIC#

Exhibit B
Page 14

Name & Address:
Edward R. Schwartz, Esq., CA Bar. No. 147553
CHRISTIE, PARKER & HALE, LLP
655 North Central Avenue, Suite 2300
Glendale, California 91203-1445
Email: ers@cph.com; T. 626-795-9900

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Guardian Pool Fence Systems, Inc.

PLAINTIFF(S)

v.

Web Direct Brands, Inc.

DEFENDANT(S).

CASE NUMBER

CV13-6548 MAN

SUMMONS

TO: DEFENDANT(S): Web Direct Brands, Inc.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Edward R. Schwartz__, whose address is __Christie, Parker & Hale, LLP, 655 N. Central Ave., Ste. 2300, Glendale, CA 91209-9001__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

SEP 5 2013

Clerk, U.S. District Court

Dated: _____

By: __JULIE PRADO__
      Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                            SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Guardian Pool Fence Systems, Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Web Direct Brands, Inc.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Edward R. Schwartz, CA Bar No. 147553
Christie, Parker & Hale, LLP
655 North Central Avenue, Suite 2300, Glendale, California 91203-1445
Email: ers@cph.com; T. (626) 795-9900

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

FAX FILING

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Patent Infringement 35 U.S.C. §§ 1 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☒ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **TORTS** **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:  Case Number: **CV13-6548**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)            CIVIL COVER SHEET            Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____  DATE: September 4, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |